UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-cr-20394 |
| Plaintiff, | HON. SEAN F. COX |
| v. | **Offense:** |
| D-1 JAMES ROBERT LIANG, | 18: U.S.C. § 371 Conspiracy to Defraud the United States, to Commit Wire Fraud, and to Violate to Clean Air Act |
| Defendant. | **Maximum Penalty:** 5 years |
| | **Maximum Fine:** Not more than $250,000 or Twice the Gross Gain/Loss |
| | **Mandatory Supervised Release:** 3 years |



FILED
SEP 0 9 2016
CLERK'S OFFICE
DETROIT

### Rule 11 Plea Agreement

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant JAMES ROBERT LIANG and the United States Attorney's Office for the Eastern District of Michigan, the United States Department of Justice, Criminal Division, Fraud Section, and the United States Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section (collectively hereafter, "the government") agree as follows:

GOVERNMENT
EXHIBIT
1

1. **Guilty Plea**

    A. **Count of Conviction**

    Defendant will enter a plea of guilty to Count One of the Indictment, which charges him with conspiracy to defraud the United States, to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and to violate to Clean Air Act, in violation of Title 42, United States Code, Section 7413(c)(2)(A), all in violation of Title 18, United States Code, Section 371, and for which the penalty is a maximum term of imprisonment of five years and a fine of up to $250,000 or twice the amount of the gross gain or loss, whichever is greater. The defendant is also subject to a special assessment of $100 and up to three years of supervised release.

    B. **Elements of Offense**

    The indictment charges defendant LIANG with a conspiracy to: (1) defraud the United States by obstructing the lawful function of the federal government, in violation of 18 U.S.C. § 371; (2) commit wire fraud, in violation of 18 U.S.C. § 1343; and (3) violate the Clean Air Act, in violation of 42 U.S.C. § 7413(c)(2)(A).

    (A) The elements for conspiracy to obstruct the lawful function of the federal government are as follows:

(1) That two or more persons conspired, or agreed, to defraud the United States, or one of its agencies or departments, in this case, the Environmental Protection Agency (EPA), by dishonest means;

(2) That the defendant knowingly and voluntarily joined the conspiracy; and

(3) That a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

(B) The elements for conspiracy to violate the wire fraud statute and Clean Air Act are as follows:

(1) That two or more persons conspired, or agreed, to commit a crime, in this case, a violation of the wire fraud statute (18 U.S.C. § 1343) and the Clean Air Act (42 U.S.C. § 7413(c)(2)(A)) as described in paragraphs (4) and (5) respectively, below;

(2) That the defendant knowingly and voluntarily joined the conspiracy;

(3) That a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

(4) *Object of Conspiracy – Wire Fraud - 18 U.S.C. § 1343*:

    (a) The defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to obtain money or property;

 (b) The scheme included a material misrepresentation or concealment of a material fact;

 (c) The defendant had the intent to defraud; and

 (d) The defendant used (or caused another to use) wire, radio or television communications in interstate or foreign commerce in furtherance of the scheme.

(5) *Object of Conspiracy - Clean Air Act - 42 U.S.C. § 7413(c)(2)(A):*

(a) The defendant knowingly made (or caused to be made) a false material statement, representation, or certification, or omission of material information;

(b) The statement, representation, or certification that was made (or omitted), or caused to be made or omitted, was in a notice, application, record, report, plan or other document required to be filed or maintained under the Clean Air Act; and

(c) The statement, representation, or certification, or omission of information, was material.

C.  **Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant's guilty plea:

From 1983 to May 2008, defendant JAMES ROBERT LIANG was an employee of Volkswagen AG ("VW AG"), working in VW AG's diesel development department in Wolfsburg, Germany.

In about 2006, LIANG and his co-conspirators began to design a new "EA 189" diesel engine. They soon realized, however, that the engine could not meet both customer expectations as well as new, stricter U.S. emissions standards. As a result, LIANG and his co-conspirators pursued and planned the use of a software function to cheat standard U.S. emissions tests (the "defeat device"). LIANG used the defeat device software while working on the EA 189 and assisted in making the defeat device software work. The co-conspirators needed to do so to obtain a certificate of conformity from the United States Environmental Protection Agency ("EPA") in order to sell vehicles in the United States. LIANG understood that EPA would not certify vehicles for sale in the United States if EPA knew that the vehicles contained a defeat device.

In or around 2008, LIANG worked with his co-conspirators to calibrate and refine the defeat device. This defeat device recognized whether the affected VW diesel vehicles were undergoing standard U.S. emissions testing on a dynamometer or being driven on the road under normal driving conditions. The defeat device accomplished this by recognizing the standard drive cycles used in EPA's emissions tests. If the vehicle's software detected that it was being tested, the vehicle performed in one mode, which satisfied U.S. emissions standards for nitrogen oxide ("NOx"). If the defeat device detected that the vehicle was not being tested, it operated in a different mode, in which the vehicle's emissions control systems were reduced substantially, causing the vehicle to emit substantially higher amounts of NOx, sometimes forty times higher than U.S. standards.

LIANG moved to the United States in May 2008 to assist in the launch of VW's diesel vehicles with EA 189 engines. From about May 2008 to the present, LIANG was the Leader of Diesel Competence for VW Group of America ("VW GOA"), a VW subsidiary. In that role, LIANG assisted in certification, testing, and warranty issues for VW diesel vehicles in the United States.

For each new model year of VW's diesel vehicles, VW employees met with EPA to seek the certifications required to sell the vehicles to U.S. customers. During one of these meetings, which LIANG attended personally in Ann Arbor, Michigan with EPA on March 19, 2007 and on March 21, 2007 with the California Air Resources Board ("CARB"), LIANG participated as his co-conspirators misrepresented that VW diesel vehicles complied with U.S. NOx emissions standards. During this meeting, LIANG's co-conspirators described VW's diesel technology and emissions control systems in detail to the staffs of the EPA and CARB but intentionally omitted LIANG and his co-conspirators' plan to include a defeat device in VW diesel vehicles. LIANG knew that VW was cheating by implementing the defeat device and that he and his co-conspirators were deceiving EPA in this meeting.

As part of the certification process for each new model year, including model years 2009 through 2016, LIANG knew his co-conspirators continued to falsely and fraudulently certify to EPA and CARB that VW diesel vehicles met U.S. emissions standards and complied with the Clean Air Act. During this time, LIANG and his co-conspirators knew that VW marketed VW diesel vehicles to the U.S. public as "clean diesel" and environmentally-friendly, and promoted the increased fuel economy. LIANG and his co-conspirators knew that these representations made to U.S. customers were false, and that VW's diesel vehicles were not clean.

As VW's "clean diesel" vehicles in the United States began to age, they experienced higher rates of warranty claims for parts and components related to emissions control systems. Some of LIANG's coconspirators believed that the increased claims were a result of the vehicle operating in testing mode too long, rather than switching to "road mode." Because of these increased claims, LIANG worked with his co-conspirators to enhance the defeat device to allow the vehicle to more easily recognize when the vehicle was no longer in testing mode. LIANG knew that his co-conspirators falsely and fraudulently told U.S. customers and others that a software update in about 2014 was intended to improve the vehicles when, in fact, LIANG and his co-conspirators knew that part of the update was intended to improve the defeat device's precision in order to reduce the stress on the emissions control systems.

In the spring of 2014, a non-government organization published the results of a study which identified substantial discrepancies in the NOx emissions from certain VW vehicles when tested on the road compared to when these vehicles were undergoing EPA standard drive cycle tests on a dynamometer. Following the study, CARB, in coordination with the EPA, attempted to work with VW to determine the

cause for the higher NOx emissions in VW diesel vehicles on the road as opposed to the dynamometer. LIANG and his co-conspirators discussed how they could answer the regulatory agencies' questions without revealing the defeat device. LIANG knew that, after these discussions, his co-conspirators intentionally made fraudulent explanations to the EPA and CARB when providing testing results, data, presentations, and statements to the EPA and CARB by failing to disclose the fact that the primary reason for the discrepancy was the defeat device.

LIANG knew that his co-conspirators also falsely and fraudulently told U.S. customers, EPA, and CARB that a voluntary recall in or around early 2015 was intended to "fix" the issues that were causing the discrepancy, when, in fact, LIANG and his co-conspirators knew that although the update lowered the NOx emissions in certain VW diesel vehicles on the road, the update did not remove the defeat device software that was the true reason for the discrepancy.

LIANG and his co-conspirators caused defeat device software to be installed in all of the approximately 500,000 VW diesel 2.0 liter light-duty passenger vehicles sold in the United States from 2009 through 2015.

2. **Sentencing Guidelines**

    A. **Standard of Proof**

    The Court will find sentencing factors by a preponderance of the evidence.

    B. **Guideline Range**

    The parties agree that the defendant's entire guideline range would be higher than sixty (60) months, which represents the statutory maximum term of imprisonment for a violation of Title 18, United States Code, Section 371. Accordingly, the 60-month statutory maximum becomes the relevant guidelines range.

3.  **SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553 and in doing so must consider the sentencing guideline range.

  A.  **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure (11)(C)(1)(C) the sentence of imprisonment in this case may not exceed the top of the sentencing guideline range of sixty months, as determined by Paragraph 2.

  B.  **Supervised Release**

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is three (3) years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

  C.  **Special Assessment**

Defendant will pay a special assessment of $100.00 at the time of sentencing.

  D.  **Fine**

The parties agree that the fine will be no more than $250,000 or twice the gross gain or loss, whichever is greater.

### E. Restitution

The Court shall order restitution to any identifiable victim of defendant's offense.

### 4. Cooperation

Defendant agrees to assist the government in the investigation and prosecution of others involved in criminal activities, as specified below.

### A. Truthful Information and Testimony.

Defendant will provide truthful and complete information concerning all facts of this case known to him. Defendant will provide full debriefings, as requested by the government, to federal, state, and local law enforcement agencies. Defendant will provide truthful testimony at all proceedings, criminal, civil, or administrative, as requested by the government. Such testimony may include, but is not limited to, grand jury proceedings, trials, and pretrial and post-trial proceedings. Defendant agrees to be available for interviews in preparation of all testimony. Defendant understands that this obligation to provide cooperation continues after sentencing and that failure to follow through constitutes a breach of this agreement. Defendant shall cooperate fully with the government, and any other law enforcement agency designated by the government, including but not limited to the Staatsanwaltschaft Braunschweig in Germany.

### B. Nature of Cooperation.

The defendant agrees to cooperate in good

faith, meaning that the defendant will not only respond truthfully and completely to all questions asked, but will also volunteer all information that is reasonably related to the subjects discussed in the debriefing. In other words, the defendant may not omit facts about crimes, participants, or defendant's involvement, and then claim not to have breached this agreement because defendant was not specifically asked questions about those crimes, participants, or involvement. Defendant will notify the government in advance if defendant intends to offer a statement or debriefing to other persons other than defendant's attorney. Defendant is not prevented in any way from providing truthful information helpful to the defense of any person. Any actions or statements inconsistent with continued cooperation under this agreement, including but not limited to criminal activity, or a statement indicating a refusal to testify, or any other conduct which in any way undermines the effectiveness of defendant's cooperation, constitutes a breach of this agreement.

C. **Government's Authority Regarding Substantial Assistance**

(1) <u>Substantial Assistance Determination</u>. It is exclusively within the government's discretion to determine whether defendant has provided substantial assistance. Upon the government's determination that defendant's cooperation amounts to substantial assistance in the investigation or prosecution of others, the

government will either seek a downward departure at sentencing under U.S.S.G. § 5K1.1, or a reduction of sentence pursuant to Fed. R. Crim. P. 35, as appropriate. If the government makes such a motion, the amount of the reduction, if any, will be determined by the Court.

(2) <u>Use of Information against Defendant</u>. In exchange for defendant's agreement to cooperate with the government, as outlined above, the government agrees not to use new information that defendant provides (pursuant to this agreement) about defendant's own criminal conduct against defendant at sentencing in this case. Such information may be revealed to the Court but may not be used by the government against the defendant in determining defendant's sentence range, choosing a sentence recommendation within the range, or departing from the range. There shall be no such restrictions on the use of information: (a) previously known to law enforcement agencies; (b) revealed to law enforcement agencies by, or discoverable through, an independent source; (c) in a prosecution for perjury or giving a false statement; or (d) in the event there is a breach of this agreement.

5. **Use of Withdrawn Plea Agreement**

If the Court allows Defendant to withdraw his guilty plea for a "fair and just reason," pursuant to Fed. R. Crim. P. 11(d)(2)(B), Defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this Plea Agreement, against him in any proceeding.

6. **Other Charges**

If the Court accepts this agreement, the government will dismiss all remaining charges in this case against the defendant.

7. **Each Party's Right to Withdraw from This Agreement**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B.

Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Paragraph 3. This is the only reason for which defendant may withdraw from this agreement.

8. **Consequences of Withdrawal of Guilty Plea or Vacation of Conviction**

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

9. **Appellate Waiver**

Defendant waives any right he may have to appeal his conviction on any grounds. This waiver does not bar a claim of ineffective assistance of counsel in court.

10. **Padilla Waiver**

Defendant acknowledges that he is not a citizen of the United States, and that his guilty plea in this case may affect or even foreclose his eligibility to remain in this country following the imposition of sentence herein. Defendant has discussed these matters with his attorney in this case, but he expressly agrees that his decision

to plead guilty is in no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences of his conviction. Defendant further agrees that because his decision to plead guilty in this case is wholly independent of the immigration consequences of a conviction, defendant agrees that he will not seek to challenge his guilty plea in any later proceeding via collateral attack on any basis relating to the immigration consequences of his plea.

11. **Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan, the United States Department of Justice, Criminal Division, Fraud Section, and the United States Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section.

12. **Scope of Plea Agreement**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before

defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

13. **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on August 31, 2016. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

BARBARA L. MCQUADE
United States Attorney
Eastern District of Michigan

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
Department of Justice

_____
Mark Chutkow
Chief, Criminal Division
John Neal
Chief, White Collar Crimes Unit

_____
Jennifer Leigh Blackwell
Trial Attorney
Environmental Crimes Section

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division
Department of Justice

_____
Benjamin D. Singer
Chief
Securities & Financial Fraud Unit
Alison Anderson
Trial Attorney

Date: 9/9/2016

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

_____                    _____
Daniel V. Nixon                              James Robert Liang
Attorney for Defendant                       Defendant

Date: 8/31/16                                Date: 08.31.2016

- 16 -